IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GARY TULLOCH,                        §
                                     §
            Plaintiff,               §
                                     §
v.                                   §       CIVIL ACTION NO. H-05-3583
                                     §
JPMORGAN CHASE & CO.,                §
                                     §
            Defendant.               §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gary Tulloch, brings this action against defendant, JPMorgan Chase & Company (JPMC), for breach of contract and fraudulent inducement.  Pending before the court is Plaintiff's Motion to Dismiss Defendant JPMorgan Chase and Co.'s Counterclaim (Docket Entry No. 6).  For the reasons set forth below, plaintiff's motion will be denied.

**I.  Background and Factual Allegations**

Plaintiff filed this action on September 7, 2005, in the County Court at Law No. 2, Harris County, Texas, Cause No. 846759, against JPMorgan Chase & Company.[1]  Plaintiff alleges that

> [o]n January 6, 2005, Plaintiff and Defendant executed a release agreement, a copy of which is attached hereto as Exhibit A, which provided for the payment of a special payment to Mr. Tulloch in the amount of FORTY-TWO THOUSAND

---

[1]See Plaintiff's Original Petition, Tab 1 attached to Notice of Removal, Docket Entry No. 1.

AND TWO HUNDRED FIFTY DOLLARS and no cents ($42,250.00).  The
special payment was to be made on or by April 4, 2005.

On April 7, 2005, Mr. Tulloch was paid THREE-THOUSAND TWO
HUNDRED FIFTY DOLLARS and no cents ($3,250.00) of the
special payment.  This partial payment was untimely.
However, Defendant has refused to pay THIRTY-NINE THOUSAND
DOLLARS and no cents ($39,000.00) remaining on the special
payment despite demand to do so.[2]

Defendant received notice of this action on September 20, 2005.[3]

On October 4, 2005, defendant filed an Original Answer and

Counterclaim.[4]  Defendant alleges in its counterclaim that

4.    The Release Agreement had an express and explicit
      confidentiality clause that DID NOT provide for the
      parties abrogating or violating their confiden-
      tiality obligations in the event of litigation over
      the Release Agreement.  To the contrary, the
      confidentiality clause was narrowly drawn to
      provide for specific parties and circumstances
      under which the confidentiality obligations would
      be suspended, none of which apply here.

5.    Attaching the Release Agreement to the Original
      Petition of plaintiff-counterdefendant Tulloch was
      not necessary to the initiation of litigation on
      his claims.  Nor was any effort or attempt made by
      plaintiff-counterdefendant Tulloch to maintain the
      confidentiality of the Release Agreement, by having
      the pleading filed under seal, or the like.

6.    The public disclosure of the Release Agreement by
      attaching it to a public pleading was a willful and
      deliberate breach of the Release Agreement by
      plaintiff-counterdefendant Tulloch.

---

[2]Id. at ¶¶ 5-6.

[3]See Notice of Removal, Docket Entry No. 1, p. 1 (citing
Original Petition Citation, Tab 2 attached thereto).

[4]See Original Answer and Counterclaim of JPMorgan Chase & Co.,
Tab 3 attached to Notice of Removal, Docket Entry No. 1.

7.   Such breach of the Release Agreement was done willfully, and in bad faith, in a crass and unsubtle effort to extort additional sums of cash from JPMC above and beyond the $42,250 already paid to the plaintiff-counterdefendant Tulloch by JPMC in satisfaction of its obligations under the Release Agreement.

8.   All conditions precedent under the Release Agreement have been performed or have already occurred.

9.   Defendant-counterclaimant JPMC seeks return of all sums paid to plaintiff-counterdefendant under the Release Agreement, plus its attorneys fees, plus any additional sums for interest or the like to which it may be entitled under the law.[5]

On October 19, 2005, defendant removed plaintiff's action to this court on the basis of diversity of citizenship.[6]   See 28 U.S.C. § 1332.  Asserting that Texas law affords him an "absolute privilege to attach the Release Agreement to his Petition,"[7] plaintiff seeks dismissal of defendant's counterclaim for failure to state a claim for which relief may be granted.

## II.   <u>Standards of Review</u>

### A.   Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the

---

[5]<u>Id.</u> at third and fourth unnumbered pages.

[6]Notice of Removal, Docket Entry No. 1.

[7]Plaintiff's Memorandum of Law in Support of His Motion to Dismiss Defendant's Counterclaim, Docket Entry No. 5, p. 2, ¶ 3.

complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002) (quoting Hishon v. King & Spalding, 104 S.Ct. 2229, 2232 (1984)).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Id. at 997 (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)). See also Conley v. Gibson, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

**B.   Application of State Law**

Where, as here, a federal court exercises jurisdiction over state law causes of action based on diversity of citizenship under 28 U.S.C. § 1332, the court must apply state substantive law.  See

-4-

Erie R. Co. v. Tompkins, 58 S.Ct. 817, 823 (1938).  See also Shanks v. AlliedSignal, Inc., 169 F.3d 988, 993 (5th Cir. 1999). Determination of state substantive law is to be made in reliance on final decisions of the state's highest court.  Shanks, 169 F.3d at 993.  "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide."  Id.  The Texas Supreme Court has yet to rule on the specific issue presented by this appeal, i.e., whether Texas law of absolute privilege extends beyond tort claims for libel and slander to claims for breach of contract.  Accordingly, the court is required to make an Erie guess as to what the Texas Supreme Court would most likely decide.  See Herrmann Holdings Ltd. v. Lucent Technologies Inc., 302 F.3d 552, 558 (5th Cir. 2002) ("[I]n deciding this case, we are required to make an Erie guess as to what the Texas Supreme Court would most likely decide.").  In making an Erie guess the court defers to intermediate state appellate court decisions "unless convinced by other persuasive data that the highest court of the state would decide otherwise."  Id. (quoting First National Bank of Durant v. Trans Terra Corp., 142 F.3d 802, 809 (5th Cir. 1998)).

### III.  Analysis

Citing James v. Brown, 637 S.W.2d 914 (Tex. 1982), and Reagan v. Guardian Life Insurance Co., 166 S.W.2d 909 (1941), plaintiff argues that defendant's counterclaim should be dismissed for

failure to state a claim for which relief may be granted because plaintiff "had the absolute privilege to attach the Release Agreement to his Petition."[8]  Citing Laub v. Pesikoff, 979 S.W.2d 686, 691-692 (Tex. App. -- Houston [1st Dist.] 1998, pet. denied), and Bird v. W.C.W., 868 S.W.2d 767 (Tex. 1994), plaintiff argues that "[w]hen the claim asserts that an injury resulted from a communication [made during the course of a judicial proceeding], the privilege bars the claim."[9]  Defendant responds that

> under Texas law legal pleadings and communications made in the course of litigation will not support an action sounding in tort for defamation . . . however . . . nothing in Texas law affords a contracting party a privilege to conduct himself during litigation in such a way as to breach pre-existing contractual obligations.[10]

Citing Shanks v. AlliedSignal, Inc., 169 F.3d 988, 995 (5th Cir. 1999), plaintiff replies that "[a]lthough Defendant casts his counterclaim as a contract-based action, it is virtually indistinguishable from a defamation claim.  Therefore, the absolute privilege must be applied to dismiss the counterclaim [because s]uch communications are absolutely immune from civil liability."[11]  Because the court is not persuaded either that defendant's

---

[8]Plaintiff's Memorandum of Law in Support of His Motion to Dismiss Defendant's Counterclaim, Docket Entry No. 5, p. 2.

[9]Id. at pp. 2-3.

[10]Response of JPMorgan Chase to Plaintiff's Motion to Dismiss Defendant's Counterclaim, Docket Entry No. 8, first page.

[11]Plaintiff's Reply to JPMorgan Chase and Co.'s Response to Plaintiff's Motion to Dismiss Defendant's Counterclaim, Docket Entry No. 9, p. 2.

counterclaim is "indistinguishable from a defamation claim," or
that the Texas Supreme Court would extend the privilege to the
breach of contract counterclaim asserted in this action, the court
concludes that plaintiff's motion to dismiss should be denied.

**A.   Texas Law of Absolute Privilege**

The absolute privilege of parties and witnesses to participate
in judicial proceedings without having to answer civil actions in
damages for libel and/or slander is well established in Texas law.
See Belo & Co. v. Wren, 63 Tex. 686 (1884), Runge v. Franklin, 10
S.W. 721 (1889).   The Texas Supreme Court has described this
absolute privilege as meaning that "[a]ny communication, oral or
written, uttered or published in the due course of a judicial
proceeding is absolutely privileged and cannot constitute the basis
of a civil action in damages for slander or libel." Reagan, 166
S.W.2d at 912.  Although the Texas Supreme Court has stated that
"[t]his privilege extends to any statement made by the judge,
jurors, counsel, parties or witnesses, and attaches to all aspects
of the proceedings, including statements made in open court,
pre-trial hearings, depositions, affidavits and any of the
pleadings or other papers in the case," James, 637 S.W.2d at
917-18, it has never held that this privilege bars all civil causes
of action arising from communications made during the course of a
judicial proceeding.   See Shanks, 169 F.3d at 995 & n.8 (recogniz-
ing that "[i]t is unclear whether, under Texas law, absolute

immunity bars all causes of action from communications during a
. . . judicial proceeding.").  Accordingly the court must make an
<u>Erie</u> guess as to whether the Texas Supreme Court would decide that
Texas law of absolute privilege bars the breach of contract
counterclaim asserted in this action.

In <u>Runge</u>, 72 Tex. at 590, the Texas Supreme Court described
the absolute privilege's bar of civil actions in damages for libel
and the policy behind it:

> . . . we believe the better and prevailing rule to be
> that for any defamatory matter contained in a pleading in
> a court of civil jurisdiction no action for libel can be
> maintained.  The power possessed by the courts to strike
> out scandalous matter from proceedings before them, and
> to punish as for contempt, is considered a sufficient
> guaranty against the abuse of the privilege. . . .  We
> believe it is and ought to be the law that proceedings in
> civil courts are absolutely privileged.  Citizens ought
> to have the unqualified right to appeal to the civil
> courts for redress, without the fear of being called to
> answer in damages for libel.

In <u>James</u>, 637 S.W.2d at 914, the Texas Supreme Court declined
to extend the absolute privilege beyond civil suits in damages for
libel and slander.  <u>James</u> involved an action for damages brought
against three psychiatrists.  637 S.W.2d at 916.  On the applica-
tion of her children, Mrs. James was involuntarily hospitalized.
She was examined by three psychiatrists, all of whom filed reports
with the court stating that she was mentally ill and likely to
injure herself or others if not immediately restrained.  After
obtaining a writ of habeas corpus pursuant to which the proceedings

-8-

against her were dismissed, Mrs. James filed suit against the three psychiatrists alleging libel, negligent misdiagnosis-medical malpractice, malicious prosecution, and false imprisonment. Upholding summary judgment for the psychiatrists, the court of appeals held that "publication of the doctors' opinions . . . [in the] mental health and guardianship proceedings was privileged and that no damages could be recovered for the consequences of publication, even though the doctors' assessments might have been arrived at negligently." Id. Although the Texas Supreme Court upheld the appeal court's decision on the libel claim, it expressly declined to extend the psychiatrists' absolute privilege to "other remedies at law." Id. at 918. The court explained that

> While the doctors' communications to the court of their diagnoses of Mrs. James' mental condition, regardless of how negligently made, cannot serve as the basis for a defamation action, the diagnoses themselves may be actionable on other grounds. . . . The unavailability of a defamation action does not preclude a plaintiff from pursuing other remedies at law. See Runge v. Franklin, 72 Tex. 585, 10 S.W. 721 (1889) and Tsesmelis v. Sinton State Bank, 53 S.W.2d 461 (Tex. Comm'n App. 1932, judgmt. adopted). Mrs. James is not prevented from recovering from the doctors for negligent misdiagnosis-medical malpractice merely because their diagnoses were later communicated to a court in the due course of judicial proceedings.

Id. at 917-918.

In Bird, 868 S.W.2d at 767, the Texas Supreme Court held that the absolute privilege extends beyond civil suits in damages for libel and slander when the claims at issue are virtually

indistinguishable from claims for defamation and the damages sought flow from defamatory communications made in the course of a judicial proceeding.  See Laub, 979 S.W.2d at 691-692 (describing Bird).  Bird was a psychologist who examined a child for signs of sexual abuse, and after concluding that the child had been abused by his natural father, signed an affidavit stating these conclusions.  In an attempt to modify a custody order, the child's mother filed the affidavit in family court.  Following dismissal of all matters, criminal and civil, predicated upon Bird's conclusion that the child had been abused, the child's natural father sued Bird for "damages for past and future mental anguish, including 1) [i]njury to his reputation; 2) [p]ublic contempt; 3) [r]idicule; 4) [l]oss of relationships; and 5) [l]oss of self-esteem."  Bird, 868 S.W.2d at 768-769.  Affirming a grant of summary judgment to Bird, the Texas Supreme Court held "that a statement in an affidavit filed as a part of a court proceeding is privileged."  Id.  The court explained that "while couched in terms of negligent misdiagnosis, the essence of the father's claim is that it was Bird's communication of her diagnosis that caused him emotional harm and related financial damages."  Id. at 771 (citing Doe v. Blake, 809 F.Supp. 1020, 1028 (D. Conn. 1992) ("extending the privilege beyond defamation actions to avoid the 'circumvention [of the policy behind the privilege] by affording an almost equally unrestricted action under a different label'")).

-10-

Read together, the <u>James</u> and <u>Bird</u> decisions show that the Texas Supreme Court has decided that Texas law of absolute privilege bars claims for defamation (i.e., libel and slander) and claims based on different legal theories when the essence of the claim at issue is damages that flow from defamatory communications made in the course of a judicial proceeding, but strongly suggest that the Texas Supreme Court would not extend the absolute privilege to claims that are not based on defamatory statements and do not seek "defamation damages." <u>See</u> <u>Bird</u>, 868 S.W.2d at 771-772. <u>See also</u> <u>Laub</u>, 979 S.W.2d at 691-692 (citing <u>Bird</u> as standing for the principle that "the judicial communication privilege cannot be circumvented by disguising a claim [for defamation] under a different label," and applying Texas law of absolute privilege to bar a variety of claims after concluding that the essence of each claim was that the plaintiff suffered injury flowing from the communication of allegedly false statements during a judicial proceeding).

**B.   Application of Texas Law to Defendant's Counterclaim**

   1.   <u>Is Defendant's Counterclaim Based on a Defamatory Statement?</u>

Defendant's counterclaim asserts a claim for breach of contract arising from plaintiff's attachment of the Release Agreement to the Original Petition that he filed in state court. Defendant alleges that plaintiff's attachment of the Release

-11-

Agreement to his Original Petition breached the Release Agreement's confidentiality clause.  Although plaintiff argues that defendant's counterclaim should be dismissed because it is "virtually indistinguishable from a defamation claim,"[12] plaintiff has not explained why defendant's counterclaim is virtually indistinguishable from a defamation claim, and the court is not persuaded that it is.

To maintain a cause of action for defamation under Texas law counter-plaintiff must plead and prove that the counter-defendant (1) published a statement (2) that was defamatory concerning the counter-plaintiff (3) while acting with actual malice regarding the truth of the statement.  WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998), cert. denied, 119 S.Ct. 1358 (1999).  Whether a publication is capable of being defamatory is initially a question of law to be determined by the court.  Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000).  To make this determination the court should consider whether the words used are reasonably capable of defamatory meaning.  See Musser v. Smith Protective Servs., Inc., 723 S.W.2d 653, 654-655 (Tex. 1987).  The determination is based on how a person of ordinary intelligence would perceive the entire statement.  Id.  See also Bentley v. Bunton, 94

---

[12]Plaintiff's Reply to JPMorgan Chase and Co.'s Response to Plaintiff's Motion to Dismiss Defendant's Counterclaim, Docket Entry No. 9, p. 2.

S.W.3d 561, 579 (Tex. 2002). A "defamatory statement" is a statement

> that tends to injure the reputation of a person referred
> to in it. ●  The statement is likely to lower that
> person in the estimation of reasonable people and in
> particular to cause that person to be regarded with
> feelings of hatred, contempt, ridicule, fear, or dislike.

Black's Law Dictionary 428 (7th ed. 1999).

In order for defendant's breach of contract counterclaim to be "virtually indistinguishable" from a defamation claim, the disclosure on which it is based, i.e., the Release Agreement, must be comprised of words that are reasonably capable of defamatory meaning. See Musser, 723 S.W.2d at 654-55.  Plaintiff has not explained why the contents of the Release Agreement are reasonably capable of defamatory meaning, i.e., why disclosure of the Release Agreement would tend to injure his reputation, or cause him to be regarded with feelings of hatred, contempt, ridicule, fear, or dislike.  Nor has he explained how or why disclosure of the Release Agreement could create a dispute regarding its truth or falsity that is capable of injuring the defendant's reputation.  Moreover, the damages that defendant seeks are not the type of damages commonly sought in defamation actions, i.e., damages for loss of reputation and mental anguish.   See Bently, 94 S.W.3d at 604. Instead, the damages that defendant seeks are "return of all sums [of money] paid to plaintiff-counterdefendant under the Release

Agreement, plus its attorneys fees . . ,"[13] damages that are typically sought in breach of contract actions. See IT Corp. v. Motco Site Trust Fund, 903 F.Supp. 1106, 1131-1132 (S.D. Tex. 1994) (under Texas law a plaintiff seeking damages for breach of contract may elect to sue either for the benefit of the bargain or for restitution). Accordingly, the court is not persuaded that defendant's breach of contract counterclaim is virtually indistinguishable from a defamation claim.

2. <u>Should the Privilege be Extended to Avoid the Circumvention of the Policy Behind It?</u>

In <u>Runge</u> the Texas Supreme Court based its recognition of the absolute privilege on its belief that "[c]itizens ought to have the unqualified right to appeal to the civil courts for redress, without fear of being called to answer in damages for libel." 72 Tex. at 590. In <u>Bird</u>, 868 S.W.2d at 771, the Texas Supreme Court made clear that the absolute privilege should be extended beyond defamation claims to claims based on different legal theories that are advanced for the purpose of circumventing the policy behind the privilege, i.e., when the essence of the claim at issue is that the plaintiff suffered injury flowing from the communication of false or defamatory statements during a judicial proceeding. See <u>Laub</u>, 979 S.W.2d at 691 (citing <u>Bird</u>, 868 S.W.2d at 771). The court

---

[13]Original Answer and Counterclaim of JPMorgan Chase & Co., Tab 3 attached to Docket Entry No. 1, fourth unnumbered page.

-14-

explained that "[t]he privilege afforded against defamation actions
is founded on the 'theory that the good it accomplishes in
protecting the rights of the general public outweighs any wrong or
injury which may result to a particular individual.'" <u>Bird</u>, 868
S.W.2d at 771 (quoting <u>Reagan</u>, 166 S.W.2d at 913). <u>See also</u> <u>Attaya
v. Shoukfeh</u>, 962 S.W.2d 237, 239 (Tex. App. -- Amarillo 1998, pet.
denied) (describing the policy underlying the absolute privilege as
"intended to protect the integrity of the process itself and to
insure that the decision-making body gets the information it
needs"); and <u>Leigh v. Parker</u>, 740 S.W.2d 101, 103 (Tex. App. --
Austin 1987, writ denied) (an action is "'privileged' if it
furthers a policy interest of such importance that one is entitled
to protection even at the expense of damage to another").

    Defendant argues that plaintiff's

> contractual confidentiality obligations predated the
> lawsuit, and it cannot be public policy to allow parties
> to a contract to unilaterally nullify such preexisting
> contractual obligations merely by filing suit. Few
> courts have addressed this issue because few lawyers
> would counsel their clients to be so risky. The few
> courts that have, have held that the contracting party
> has, in essence, contractually waived any litigation-
> communication privilege that might arguably apply. <u>See</u>
> <u>Wentland v. Wass</u>, 25 Cal.Rptr.3d 109 (Cal.App. 2005).
> Here, [plaintiff] contractually obligated himself to
> silence on the terms of his separation agreement from
> JPMC. His Motion to Dismiss amounts to no more than a
> naked assertion that he has the right to unilaterally and
> arbitrarily ignore that obligation merely by filing a
> lawsuit that alleges JPMC breached some other part of the
> same contract.

-15-

That assertion, in turn, highlights the audacity of [plaintiff's] Motion to Dismiss: there was no reason for him to attach a copy of the entire agreement, unredacted, to his lawsuit. On their face his actions amount to a willful and deliberate breach of the confidentiality clause. [Plaintiff] did not even try to adhere to his confidentiality obligations—functionally speaking he simply tore up the confidentiality clause and scattered it to the four winds, asserting the right to do this simply because he had asserted that JPMC had breached some other portion of the contract.[14]

Plaintiff does not argue, and the court does not find, that plaintiff's decision to attach an unredacted copy of the Release Agreement to his publicly filed Original Petition furthers the public policy that the Texas Supreme Court has said the absolute privilege is intended to promote, i.e., that "[c]itizens ought to have the unqualified right to appeal to the civil courts for redress, without fear of being called to answer in damages for libel." Runge, 72 Tex. at 590. Nor has plaintiff argued that the good accomplished by disclosure of the Release Agreement outweighs any wrong or injury that its disclosure could cause the defendant to suffer. Moreover, for the reasons explained above, the court is not persuaded that the defendant's counterclaim is essentially a defamation claim that the defendant has recast as a breach of contract claim to circumvent the policy behind the absolute privilege. Instead, defendant's counterclaim alleges that

---

[14]Surresponse of JPMorgan Chase to Plaintiff's Motion to Dismiss Defendant's Counterclaim, Docket Entry No. 11, second and third pages.

plaintiff's public disclosure of the unredacted Release Agreement deprived the defendant of the benefit of the bargain memorialized therein, and defendant seeks the contract damages that flow from the alleged breach.  Accordingly, the court concludes that there is no reason to believe that the Texas Supreme Court would extend the absolute privilege to bar the breach of contract counterclaim that the defendant has asserted against the plaintiff in this action.

## IV. Conclusions and Order

For the reasons explained above, the court concludes that the counterclaim for breach of contract that defendant has alleged against the plaintiff is not barred by Texas law of absolute privilege.  Accordingly, Plaintiff's Motion to Dismiss Defendant JPMorgan Chase and Co.'s Counterclaim (Docket Entry No. 6) is **DENIED**.

The January 27, 2006, Scheduling Conference will be held at 2:00 p.m., instead of 3:00 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.

**SIGNED** at Houston, Texas, on this 24th day of January, 2006.

SIM LAKE
UNITED STATES DISTRICT JUDGE